1    Timothy G. Kasparek     SBN 019154
2    **TIMOTHY G. KASPAREK, PLLC**
    P.O. Box 7437
3    Goodyear, Arizona 85338
    Telephone:   623-242-8945
4    Facsimile:    866-564-1457
    tklaw@cox.net
5

6    Attorney for *Plaintiff, Sogeti USA LLC*

7

**IN THE UNITED STATES DISTRICT COURT**

8

**DISTRICT OF ARIZONA**

9

| | |
|---|---|
| 10   **SOGETI USA LLC,** a Delaware Limited Liability Company, ) ) | **NO. 2:08-CV-1197** |
| 11            Plaintiff, ) ) | |
| 12    vs. ) ) | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| 13   **MICHAEL SCARIANO,** an Arizona resident; **CHRISTIAN MARTINEZ,** an ) ) | |
| 14   Arizona resident; **MICHAEL COLLINS,** a Texas resident; **NEUDESIC, LLC,** a ) ) | **(Jury Demand Endorsed Hereon)** |
| 15   California Limited Liability Company. ) ) | |
| 16           Defendants. ) ) | |
| 17 | |

18

19      Plaintiff Sogeti USA LLC ("Sogeti") for its Complaint against Defendants

20 Michael Scariano, Christian Martinez, Michael Collins ("Collins-TX") and Neudesic,

21 LLC ("Neudesic") hereby alleges as follows:

22                       **INTRODUCTION**

23      1.    This Complaint seeks damages and injunctive relief, preliminary and

24 permanent, against defendants. Defendants Scariano, Martinez and Collins-TX

25 previously were employees of Sogeti with written agreements containing restrictive

26 covenants prohibiting the direct or indirect solicitation of Sogeti's customers and

LAW OFFICES
TIMOTHY G. KASPAREK, PLLC
P.O. Box 7437
Goodyear, Arizona 85338
Telephone: 623-242-8945
Facsimile: 866-564-1457

LAW OFFICES
TIMOTHY G. KASPAREK, PLLC
P.O. Box 7437
Goodyear, Arizona 85338
Telephone: 623-242-8945
Facsimile: 866-564-1457

employees, and also prohibiting the use of Sogeti's confidential and trade secret information. Sogeti alleges that Neudesic, the current employer of Scariano, Martinez and Collins-TX, and such employees, through their direct and indirect conduct and efforts, have solicited eight employees and at least three customers of Sogeti, and have used confidential and trade secret information of Sogeti, in violation of the restrictive covenants in previous agreements with Sogeti and its predecessor, Software Architects, Inc. ("SARK"). As a result of such wrongful conduct, six of the eight employees of Sogeti solicited by defendants between April and June 2008 have hired by Neudesic. Sogeti brings this action, therefore, alleging claims for breach of restrictive covenants in the Sogeti/SARK agreements, interference with contract or business relations, misappropriation of trade secrets, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty.

## THE PARTIES, JURISDICTION AND VENUE

2.    Sogeti is a Delaware limited liability company, with its principal place of business in Dayton, Ohio and a business office in Phoenix, Arizona.

3.    Neudesic is a California limited liability company, with its principal place of business in Irvine, California and a business office in Phoenix, Arizona.

4.    Scariano is a resident of the State of Arizona, residing in Maricopa County, City of Phoenix.

5.    Martinez is a resident of the State of Arizona, residing in Maricopa County, City of Glendale.

6.    Collins-TX is a resident of the State of Texas, residing in Tarrant County, City of Colleyville.

7.    There is complete diversity among the parties and the amount in controversy exceeds $75,000. Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1332.

LAW OFFICES
TIMOTHY G. KASPAREK, PLLC
P.O. Box 7437
Goodyear, Arizona 85338
Telephone: 623-242-8945
Facsimile: 866-564-1457

8.     A substantial part of the alleged events giving rise to this action occurred in the District of Arizona.  Scariano and Martinez reside within the District of Arizona. Sogeti and Neudesic have business offices within the District of Arizona.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

### Sogeti Business And Acquisition Of Software Architects

9.     Sogeti USA LLC ("Sogeti") provides local professional information technology services to business and public sector organizations.  It is a wholly owned subsidiary of the international Capgemini organization, one of the world's leading providers of consulting, technology and outsourcing services.

10.     Although part of an informal international network, Sogeti operates in a decentralized and entrepreneurial way.  Sogeti is located close to and has a strong bond with its clients and employees.

11.     Unlike a manufacturing company, whose assets are predominately tangible, Sogeti's two principal and visible assets are its people and its relationship of trust that has been built up patiently with the company's customers over the years.

12.     Sogeti acquired Software Architects, Inc. ("SARK") on March 1, 2007. SARK was an information technology company, headquartered in Chicago, whose eleven offices nationally included Phoenix and Dallas.

### Collins-TX And Scariano Employment, Agreements And Covenants With Sogeti

13.     When Sogeti acquired SARK, Collins-TX and Scariano were key employees of SARK.  Collins-TX was Senior Vice President – West in the Dallas, Texas office of SARK.  Scariano was Sales Director of the Phoenix, Arizona office of SARK.  In the SARK organization, Scariano reported to Collins-TX.

LAW OFFICES
TIMOTHY G. KASPAREK, PLLC
P.O. Box 7437
Goodyear, Arizona 85338
Telephone: 623-242-8945
Facsimile: 866-564-1457

14. After Sogeti acquired SARK, Collins-TX became Geographic Vice President of the Dallas, Texas office of Sogeti and Scariano became Geographic Vice President of the Phoenix, Arizona office of Sogeti.

15. During their employment by SARK, Collins-TX and Scariano developed and maintained a close professional and personal relationship, which continued after their employment by Sogeti.

16. Collins-TX and Scariano had employment agreements with Sogeti. The Collins-TX and Scariano employment agreements are attached as exhibits A and B, respectively, and incorporated fully in this Complaint by reference.

17. The Collins-TX and Scariano employment agreements with Sogeti included restrictive covenants which state:

6. Restrictive Covenant.

a) Employee covenants and agrees that Employee:

(i) during the period of his/her employment with Employer, he/she is a full-time employee of Employer and will devote his/her best efforts for Employer. Employee agrees that he/she owes a duty of loyalty to Employer. Employee further acknowledges and agrees that, during his/her employment with Employer, he/she may not solicit or sell, for his/her own benefit or for any other entity, information technology or management consulting services that are competitive with the services of Employer, directly or indirectly; and

(ii) for one year following the termination of such employment for any reason, including involuntary termination without cause, he/she may not directly or indirectly solicit, sell or perform, for his/her own benefit or for any other entity, information technology or management consulting services that are competitive with the services of Employer, directly or indirectly, to or for any entity or customer for which Employee or employees under his/her managerial control (where applicable) has solicited, sold or performed any information technology or management consulting services on behalf of Employer during

- 4 -

LAW OFFICES
TIMOTHY G. KASPAREK, PLLC
P.O. Box 7437
Goodyear, Arizona 85338
Telephone: 623-242-8945
Facsimile: 866-564-1457

any part of the year immediately preceding the termination of his/her employment; provided, however, that this restriction shall, in the case of multilocation entities and customers, be limited to the location or locations of the entity or customer in question in which Employee or employees under his/her managerial control performed, sold or solicited services or to which he or they otherwise had access and offices of such entity or customer within a one hundred-mile radius of such location or locations; and

(iii) during the period of such employment and for eighteen months following the termination of such employment for any reason, including involuntary termination without cause, he/she may not, either directly or indirectly, solicit, attempt to solicit, or hire any employee of Employer who is employed at any office of Employer at or for which Employee or employees under his/her managerial control (where applicable) performed any of the duties of such employment or otherwise had access, in any capacity whatsoever, for his/her own account or on behalf of any person or corporation other than Employer, nor attempt to induce any such employee to leave the employ of Employer to work for Employee or any other person, firm or corporation.

b) Employee and Employer acknowledge and agree that the duration and geographic scope of the covenants contained in Section 6(a) are fair and reasonable. Accordingly, Employee and Employer agree that, in the event that any of the covenants contained in Section 6(a) is nevertheless judicially determined to be unenforceable because of the duration or geographic scope thereof, the court making such determination is hereby directed to reduce such duration and/or scope to the extent necessary to enable such court to determine that such covenant is reasonable and enforceable, and to enforce such covenant as so amended.

c) Employee understands and acknowledges that it Is not Employer's intention to interfere in any way with Employee's employment opportunities, except in such situations where the same conflict with the legitimate business interests of Employer. Employee agrees that he/she will notify Employer in writing if he/she has, or reasonably should have, any questions regarding the applicability of this Agreement to Employee's activities.

LAW OFFICES
TIMOTHY G. KASPAREK, PLLC
P.O. Box 7437
Goodyear, Arizona 85338
Telephone: 623-242-8945
Facsimile: 866-564-1457

18. The Collins-TX and Scariano employment agreements with Sogeti included covenants and provisions regarding private, customer and trade secret information which state:

3. <u>Private Information.</u>

Employee agrees with Employer that the work for which he/she is employed is and will be of a private nature, and in connection with the performance of his/her services on behalf of Employer, Employer may make available to him/her information of a confidential nature as to Employer and its clients, methods, trade secrets, programs, operations, customers and employees. Employee warrants and agrees that he/she will receive in strict confidence all such confidential information belonging to Employer or to the clients of Employer. Employee further agrees to maintain and to assist Employer in maintaining the secrecy of such information, and to take the same precautions as he/she would with his/her own proprietary and confidential information to prevent it from coming into unauthorized hands.

Employee further covenants and agrees that:

(i) he/she will neither copy nor distribute any confidential material, or other confidential or proprietary information which comes into his/her possession as a result of his/her employment by Employer, other than for approved Employer use;

(ii) he/she will not during the period of employment by Employer nor at any time thereafter, directly or indirectly, disclose to others and/or use for his/her own benefit or for the benefit of others, confidential information including, but not limited to, trade secrets, customer lists, employee and prospective employee information, proprietary software products, profit and loss statements, financial statements, financial ratio analyses or any other confidential financial information pertaining to the business of Employer or to any of its clients, consultants, licensees or affiliates, acquired by him/her during the period of his/her employment, except to the extent as may be necessary in the ordinary course of performing his/her duties as an Employee of Employer or as otherwise required by applicable law or legal or regulatory process;

- 6 -

LAW OFFICES
TIMOTHY G. KASPAREK, PLLC
P.O. Box 7437
Goodyear, Arizona 85338
Telephone: 623-242-8945
Facsimile: 866-564-1457

(iii) he/she will not disclose to Employer or attempt to induce Employer to use any confidential information or material to which Employer is not entitled; and

(iv) upon termination of his/her employment with Employer, he/she will return to Employer or to Employer's customer all materials and information, and any copies thereof and certify to Employer that he/she no longer has any rights to such materials or information, and he/she will covenant that the original and all copies of such materials and information have been returned to Employer or to Employer's customer, and Employee hereby covenants that he/she will not develop information technology or management consulting services or products that are competitive with the services of Employer based upon the knowledge obtained while employed by, or as result of being employed by, Employer. Employee will undertake all reasonably necessary and appropriate steps to ensure that the confidentiality of Employer's proprietary, confidential and/or trade secret information shall be maintained.

4.  Customer Information.

Employee recognizes and acknowledges that the relationship between Employer and its customers and potential customers involves the exchange of private information, both oral and written, by both the customer or potential customer and Employer. Employee acknowledges that all such information including, but not limited to, the identity of Employer's customers or potential customers, the identity of Employer's customers' representatives with whom Employer has dealt, the identity of all the services being performed for each such customer by Employer, the identity of employees or consultants employed by Employer in the performance of such services, the price being charged by Employer to such customers or potential customers and the needs of such customers or potential customers, are all trade secrets of Employer and constitute private information disclosed to Employee in connection with his/her employment. Therefore, Employee agrees that any use of such information, for any reason, for his/her own account or on behalf of any person or corporation other than Employer, would constitute improper use of such information and trade secrets.

19.  Collins-TX' employment by Sogeti was terminated on September 21, 2007. In connection with his termination, Collins-TX entered into a Settlement Agreement and

- 7 -

LAW OFFICES
TIMOTHY G. KASPAREK, PLLC
P.O. Box 7437
Goodyear, Arizona 85338
Telephone: 623-242-8945
Facsimile: 866-564-1457

Release, which acknowledged the existence of Collins-TX' employment agreement with Sogeti.

20.   After termination of his employment with Sogeti, Collins-TX became employed by Neudesic, LLC ("Neudesic"), a competitor of Sogeti.  Collins-TX remains employed by Neudesic in its Dallas, Texas office.

### Neudesic Hires Scariano With Assistance Of Collins-TX

21.   Neudesic acquired knowledge of the restrictive covenants and provisions of Sogeti's employment agreements during or after recruiting Collins-TX, if not before.

22.   During or before February 2008, Neudesic began recruiting Scariano for employment.

23.   Neudesic recruited Scariano for employment with the assistance of Collins-TX, who had become an employee of Neudesic.

24.   Neudesic and Collins-TX used private, confidential and trade secret information of Sogeti to recruit Scariano for employment by Neudesic.

25.   Neudesic and Collins-TX recruited Scariano with knowledge of and in violation of the restrictive covenants and provisions of the prior Collins-TX' agreement with Sogeti.

26.   Scariano gave notice to John Rogan, Executive Vice President of Sogeti, on March 31, 2008 that Scariano was resigning his employment effective April 11, 2008. Scariano's notice did not disclose that he was becoming employed by Neudesic. Scariano's notice to Rogan stated:

It is with great sadness that I announce my departure from Sogeti.  Since 1998, I have had the most wonderful experience working with such a great group of people.  I am very proud of what the Phoenix Office has accomplished and couldn't have done it without everyone's support and help!  This Office will do amazing things in 2008 and the years to come.

I have decided to take a new opportunity in Chicago.  Cindy and my daughters, Madison & Morgan, are looking forward to being with family.  Therefore, my

LAW OFFICES
TIMOTHY G. KASPAREK, PLLC
P.O. Box 7437
Goodyear, Arizona 85338
Telephone: 623-242-8945
Facsimile: 866-564-1457

last day will be Friday, April 11th. I will do whatever is necessary to make this a smooth transition for everyone.

Best of luck in the future and thanks for all your support!

27. Scariano resigned his employment with Sogeti on April 11, 2008 to become employed by Neudesic.

28. Since his employment by Neudesic, Scariano continues to reside in Arizona and has worked out of Neudesic's Phoenix, Arizona office.

**Neudesic Hires Martinez With Assistance Of Scariano**

29. During Scariano's employment by Sogeti and after Collins-TX' had become employed by Neudesic, Neudesic began recruiting Christian Martinez ("Martinez") for employment.

30. Martinez was previously employed by SARK in its Phoenix, Arizona office and became an employee of Sogeti in its Phoenix office after the acquisition of SARK by Sogeti on March 1, 2007.

31. Martinez had a written Employee Agreement with SARK, a copy of which is attached to this Complaint as Exhibit C and incorporated fully in the Complaint by reference.

32. The Employee Agreement between SARK and Martinez contains provisions and agreements regarding confidentiality, non-competition and intellectual property.

33. Neudesic acquired knowledge of the restrictive covenants and provisions of SARK's Employee Agreement during or after the recruiting of Collins-TX or Scariano, if not before.

34. SARK's rights under the Employee Agreement with Martinez were assigned to Sogeti as part of the acquisition of SARK by Sogeti on March 1, 2007.

- 9 -

LAW OFFICES
TIMOTHY G. KASPAREK, PLLC
P.O. Box 7437
Goodyear, Arizona 85338
Telephone: 623-242-8945
Facsimile: 866-564-1457

35. Neudesic knew that SARK'S rights under its Employee Agreements were assigned to Sogeti as part of the acquisition of SARK by Sogeti on March 1, 2007.

36. Martinez was employed by Sogeti as a Principal Consultant and worked as the Microsoft Practice Manager, reporting directly to Scariano as Geographic Vice President.

37. During his employment by Sogeti as Geographic Vice President and while he was being recruited by Neudesic, Scariano advised Martinez of his intention to resign employment with Sogeti and become employed by Neudesic.

38. During his employment by Sogeti as Geographic Vice President and while he was being recruited by Neudesic, Scariano recommended to Neudesic that they employ Martinez.

39. During his employment by Sogeti as Geographic Vice President and while he was being recruited by Neudesic, Scariano encouraged Martinez to resign his employment with Sogeti and become employed by Neudesic.

40. Martinez resigned his employment with Sogeti on March 14, 2008.

41. After resigning his employment with Sogeti, Martinez immediately became employed by Neudesic in its Phoenix, Arizona office.

42. Neudesic negotiated the employment of Martinez with the assistance and participation of Scariano, who acted in concert with Neudesic.

43. Neudesic and Scariano used private, confidential and trade secret information of Sogeti in order for Neudesic to recruit Martinez.

44. Neudesic and Scariano recruited Martinez with knowledge of and in violation of the restrictive covenants and provisions of the Scariano's agreement with Sogeti.

LAW OFFICES
TIMOTHY G. KASPAREK, PLLC
P.O. Box 7437
Goodyear, Arizona 85338
Telephone: 623-242-8945
Facsimile: 866-564-1457

**Neudesic Hires Sivey With Assistance Of Scariano**

45. Josh Sivey ("Sivey") became employed by Sogeti in its Phoenix, Arizona office on May 21, 2007.

46. Sivey was employed by Sogeti as a Senior Consultant and worked as the Business Intelligence Practice Lead.

47. During his employment by Sogeti, Sivey began interviewing for employment with Statera Corporation ("Statera"), a business competitor of Sogeti.

48. Sivey advised Scariano that he was interviewing with Statera and had received an offer of employment from them.

49. Scariano failed to act to in Sogeti's interest to retain Sivey as a Sogeti employee.

50. While employed by Sogeti, Scariano communicated to Sivey that Scariano was resigning from Sogeti to become employed by Neudesic.

51. Scariano encouraged Sivey to become employed by Neudesic, rather than Statera.

52. Sivey resigned his employment with Sogeti on April 11, 2008, the same day that Scariano resigned his employment with Sogeti.

53. After resigning his employment with Sogeti, Sivey became employed by Neudesic, rather than Statera.

54. Neudesic negotiated the employment of Sivey with the assistance and participation of Scariano, who acted in concert with Neudesic.

55. Neudesic and Scariano used private, confidential and trade secret information of Sogeti in order for Neudesic to recruit Sivey.

56. Neudesic and Scariano recruited Sivey with knowledge of and in violation of the restrictive covenants and provisions of the Scariano's agreement with Sogeti.

LAW OFFICES
TIMOTHY G. KASPAREK, PLLC
P.O. Box 7437
Goodyear, Arizona 85338
Telephone: 623-242-8945
Facsimile: 866-564-1457

**Neudesic Solicits Schroedl With Assistance Of Scariano And Martinez**

57.   Nicole Schroedl ("Schroedl") became employed by SARK as a recruiter in the Phoenix, Arizona office in July 2006.

58.   Schroedl became employed by Sogeti after the acquisition of SARK by Sogeti on March 1, 2007, and continued in the position of recruiter.

59.   Schroedl reported to Scariano in both the SARK and Sogeti organizations.

60.   In December 2007, Schroedl became a marketing Account Executive for Sogeti upon the encouragement and recommendation of Scariano, as Geographic Vice President in the Phoenix office.

61.   On April 9, 2008, prior to his resignation from Sogeti on April 11, 2008, but after the notice of resignation on March 31, 2008, Scariano attended a quarterly Microsoft Partner Briefing ("Microsoft meeting") at the Biltmore Hotel, Phoenix, Arizona.

62.   At the time of the Microsoft meeting at the Biltmore, Scariano had agreed to become employed by Neudesic after his resignation from Sogeti on April 11, 2008.

63.   Schroedl attended the same Microsoft meeting at the Biltmore on April 9, 2008.

64.   Martinez attended the same Microsoft meeting at the Biltmore on April 9, 2008

65.   Scariano introduced Schroedl to Parsa Rohani ("Rohani"), Neudesic's Chief Executive Officer, at the same Microsoft meeting at the Biltmore on April 9, 2008.

66.   Scariano introduced Schroedl to Sal Manzo ("Manzo"), Neudesic's Vice President of West Regional Services, at the same Microsoft meeting at the Biltmore on April 9, 2008.

67.   During the same Microsoft meeting, or as it was concluding, Rohani invited Schroedl to a Neudesic reception for Microsoft people after the Microsoft meeting.

LAW OFFICES
TIMOTHY G. KASPAREK, PLLC
P.O. Box 7437
Goodyear, Arizona 85338
Telephone: 623-242-8945
Facsimile: 866-564-1457

68.  Schroedl declined Rohani's invitation to the Neudesic reception.

69.  Martinez encouraged Schroedl persistently to attend the Neudesic reception.

70.  Schroedl declined Martinez' encouragement to attend the Neudesic reception.

71.  As Schroedl was walking to her automobile after the Microsoft meeting, Scariano encouraged Schroedl to attend the Neudesic reception, which she then decided to do.

72.  While at the Neudesic reception, Schroedl socialized with Rohani and Martinez.

73.  Prior to the Neudesic reception and Scariano's introduction to them, Schroedl did not know Rohani or Manzo, nor did she have a business reason to deal with them in her employment with Sogeti.

74.  Upon leaving the Neudesic reception, Martinez made a statement to Schroedl that she would begin employment with Neudesic later in the month or words to this effect.  Schroedl stated that she would not and left the reception.

75.  On or about April 28, 2008, Schroedl received a text message on her mobile telephone stating that the sender would like to talk to her about an opportunity with Neudesic.  The message came from a telephone with a 720 area code.

76.  Schroedl had not given her mobile telephone number to anyone from Neudesic, so she questioned whether the sender of the text message obtained her mobile telephone number from Scariano or Martinez.

77.  After consideration over days, Schroedl responded to the text message that she was interested in the opportunity with Neudesic.

78.  In response to her reply text message, Schroedl received an email from Manzo sent to Schroedl's personal email address.

LAW OFFICES
TIMOTHY G. KASPAREK, PLLC
P.O. Box 7437
Goodyear, Arizona 85338
Telephone: 623-242-8945
Facsimile: 866-564-1457

79. Thereafter, Jacqlyn Nielsen ("Nielsen"), a Neudesic recruiter, contacted Schroedl on or about May 1, 2008, and made arrangements for Schroedl to travel to Irvine, California, where Neudesic's corporate headquarters are located, to begin the interview process on or about May 12, 2008.

80. Prior to an interview by Neudesic in California, Schroedl had lunch with Scariano in the Phoenix area, during which Scariano stated that Rohani and Manzo were excited that Schroedl was going to interview with Neudesic.

81. At the same luncheon meeting, Scariano stated that Schroedl would be meeting with Neudesic's Vice President of Sales.

82. Schroedl and Scariano also discussed Neudesic's compensation plan during the same luncheon meeting.

83. During Neudesic's recruitment of Schroedl, she met with Scariano other times over lunch, during which they discussed Shroedl's potential employment by Neudesic.

84. Later, Schroedl decided to remain at Sogeti. Schroedl advised Nielsen and Manzo of her decision.

85. Neudesic solicited Schroedl for employment with the assistance and participation of Scariano and Martinez, who acted in concert with Neudesic.

86. Neudesic, Scariano and Martinez used private, confidential and trade secret information of Sogeti in order for Neudesic to recruit Schroedl.

87. Neudesic and Scariano recruited Schroedl with knowledge of and in violation of the restrictive covenants and provisions of the Scariano's agreement with Sogeti and Martinez' agreement with SARK, which had been assigned to Sogeti.

**Neudesic Solicits Schmalbach With Assistance Of Scariano**

88. Jeffrey Schmalbach ("Schmalbach") became employed by SARK in 2004 as a sales representative in the Phoenix, Arizona office.

- 14 -

LAW OFFICES
TIMOTHY G. KASPAREK, PLLC
P.O. Box 7437
Goodyear, Arizona 85338
Telephone: 623-242-8945
Facsimile: 866-564-1457

89. Scariano hired Schmalbach for SARK.

90. Schmalbach became employed by Sogeti after the acquisition of SARK by Sogeti on March 1, 2007, and continued in the sales function as Account Representative.

91. Schmalbach reported to Scariano in both the SARK and Sogeti organizations.

92. Scariano knew that Schmalbach was Sogeti's top sales revenue producer in Phoenix and a one of Sogeti's highest sales revenue producers nationally.

93. Because of their respective positions within SARK and Sogeti, Scariano and Schmalbach communicated with each other on a regular basis, including out-of-town business travel together for marketing purposes.

94. Scariano continued to communicate with Schmalbach after Scariano's resignation from Sogeti on April 11, 2008 and his employment by Neudesic.

95. Within two weeks after Scariano resigned from Sogeti, Neudesic's Vice President of West Regional Services, Manzo, sent a text message to Schmalbach's mobile telephone asking if he wanted to meet Manzo for dinner or drinks.

96. Schmalbach did not know Manzo and Schmalbach had not given Manzo his mobile telephone number.

97. Schmalbach sent a reply text message to Manzo that he would meet him.

98. Manzo sent a reply text message to Schmalbach requesting that he come to California to meet.

99. Schmalbach called Scariano to discuss Manzo's communications and his request that Schmalbach come to California to meet.

100. Scariano encouraged Schmalbach to go to California to interview with Neudesic.

101. Schmalbach sent a reply text message to Manzo that he could not come to California.

102. Schmalbach called Scariano back after sending the text message to Manzo described in paragraph 101. In reply, Scariano stated to Schmalbach that he thought Schmalbach was making a mistake by not going to California.

103. Manzo sent a reply text message to Schmalbach that Manzo would advise Schmalbach the next time Manzo was in Phoenix.

104. Near the end of April 2008, Scariano communicated to a competitor of Neudesic that the competitor should "stay away from my boy", referring to Schmalbach.

105. Some time after Manzo's text message described in paragraph 103, Scariano advised Schmalbach that Manzo was in Phoenix.

106. The next day, Manzo left a voice message for Schmalbach requesting a meeting in Phoenix.

107. Schmalbach sent a text message to Manzo, in reply to Manzo's voice message, stating that Schmalbach did not intend to leave Sogeti, but that Schmalbach would meet Manzo for lunch.

108. Manzo sent a reply text message to Schmalbach that he was not trying to recruit Schmalbach.

109. Neudesic solicited Schmalbach for employment with the assistance and participation of Scariano, who acted in concert with Neudesic.

110. Neudesic and Scariano used private, confidential and trade secret information of Sogeti in order for Neudesic to recruit Schmalbach.

111. Neudesic and Scariano recruited Schmalbach with knowledge of and in violation of the restrictive covenants and provisions of the Scariano's agreement with Sogeti.

LAW OFFICES
TIMOTHY G. KASPAREK, PLLC
P.O. Box 7437
Goodyear, Arizona 85338
Telephone: 623-242-8945
Facsimile: 866-564-1457

## Neudesic Has Solicited Six Additional Sogeti Employees And Hired Five

### Tiffany MT Nguyen

112. Since Scariano's notice of resignation on March 31, 2008 and resignation from Sogeti on April 11, 2008, Neudesic has recruited at least six additional employees in the Phoenix office of Sogeti and has hired five of them.

113. Tiffany MT Nguyen ("Nguyen") is employed by Sogeti in Phoenix as a Principal Consultant and Information Worker Practice Lead.

114. Between April 11 and May 14, 2008 with knowledge of her qualifications and capabilities acquired from Scariano and Martinez, Neudesic solicited Nguyen for employment.

115. Nguyen initially declined Neudesic's solicitation.

116. Neudesic aggressively pursued Nguyen and made an offer of employment to her with financial terms.

117. Nguyen again declined Neudesic's solicitation and offer.

118. Neudesic continued to pursue Nguyen aggressively and increased the financial terms of their employment offer.

119. In response to Neudesic's second financial terms offer, Nguyen submitted two weeks notice of resignation to Sogeti.

120. In order to retain Nguyen's services, Sogeti was required to make a financial terms offer in excess of Neudesic's last offer.

121. After Sogeti's increased financial terms offer, Nguyen decided to remain employed by Sogeti.

122. Neudesic solicited Nguyen for employment with the assistance and participation of Scariano and Martinez, who acted in concert with Neudesic.

123. Neudesic, Scariano and Martinez used private, confidential and trade secret information of Sogeti in order for Neudesic to recruit Nguyen.

LAW OFFICES
TIMOTHY G. KASPAREK, PLLC
P.O. Box 7437
Goodyear, Arizona 85338
Telephone 623-242-8945
Facsimile: 866-564-1457

LAW OFFICES
TIMOTHY G. KASPAREK, PLLC
P.O. Box 7437
Goodyear, Arizona 85338
Telephone: 623-242-8945
Facsimile: 866-564-1457

124. Neudesic recruited Nguyen with knowledge of and in violation of the restrictive covenants and provisions of the Scariano's agreement with Sogeti and of Martinez' agreement with SARK, which was assigned to Sogeti.

125. Scariano and Martinez violated of the restrictive covenants and provisions of the Scariano's agreement with Sogeti and of Martinez' agreement with SARK, which was assigned to Sogeti, in connection with Neudesic's solicitation of Nguyen.

**Michael F. Collins**

126. Michael F. Collins, III ("Collins-AZ") was hired by SARK on May 3, 2005 for its Phoenix office.

127. After the acquisition of SARK by Sogeti on March 1, 2007, Collins-AZ became employed by Sogeti in the Phoenix office, where he worked as Principal Consultant.

128. Collins-AZ was supervised by Scariano during his employment by SARK and supervised by Scariano, Martinez and Scott Alloway ("Alloway") during his employment by Sogeti.

129. Alloway became Geographic Vice President of Sogeti's Phoenix office after Scariano tendered his resignation notice on March 31, 2008.

130. Collins-AZ performed consulting work for Sogeti's customer, Tri-West Health Care Alliance ("Tri-West") in April and May, 2008, on its premises.

131. While he was employed by Sogeti, Martinez performed consulting work for Sogeti's customer, Tri-West, on its premises.

132. After Martinez resigned from employment by Sogeti on April 3, 2008, and became employed by Neudesic, he continued to perform consulting work for Tri-West, on its premises.

133. In early May or late April, 2008, Collins-AZ requested permission from Sogeti to become employed directly by Tri-West.

LAW OFFICES
TIMOTHY G. KASPAREK, PLLC
P.O. Box 7437
Goodyear, Arizona 85338
Telephone: 623-242-8945
Facsimile: 866-564-1457

134. Alloway advised Collins-AZ that Sogeti would not permit him to become a direct employee of Tri-West.

135. The next day, after the events described in paragraph 134, Collins-AZ submitted his two weeks notice of resignation of employment by Sogeti.

136. Collins-AZ advised Alloway and other Sogeti employees that Collins-AZ was going to work for a "ground floor" opportunity at a small venture company, whose name he did not disclose, close to his home.

137. Since Collins-AZ' resignation from employment by Sogeti on May 16, 2008, Sogeti has learned that Collins-AZ is employed by Neudesic.

138. Neudesic employed Collins-AZ as a result of its knowledge of the qualifications and capabilities of Collins-AZ acquired from Scariano and Martinez.

139. Neudesic employed Collins-AZ with the assistance and participation of Scariano and Martinez, who acted in concert with Neudesic.

140. Neudesic, Scariano and Martinez used private, confidential and trade secret information of Sogeti in order for Neudesic to employ Collins-AZ.

141. Neudesic employed Collins-AZ with knowledge of and in violation of the restrictive covenants and provisions of the Scariano's agreement with Sogeti and of Martinez' agreement with SARK, which was assigned to Sogeti.

142. Scariano and Martinez violated of the restrictive covenants and provisions of the Scariano's agreement with Sogeti and of Martinez' agreement with SARK, which was assigned to Sogeti, in connection with Neudesic's employment of Collins-AZ.

**Sandeep Patadia**

143. Sandeep Patadia ("Patadia") was hired by SARK on March 23, 2006 for its Phoenix office.

144. After the acquisition of SARK by Sogeti on March 1, 2007, Patadia became employed by Sogeti in the Phoenix office, where she worked as a Consultant.

LAW OFFICES
TIMOTHY G. KASPAREK, PLLC
P.O. Box 7437
Goodyear, Arizona 85338
Telephone: 623-242-8945
Facsimile: 866-564-1457

145. Patadia was supervised by Scariano during her employment by SARK and supervised by Scariano, Martinez and Alloway during her employment by Sogeti.

146. Patadia performed consulting work for Sogeti's customer, Tri-West, on its premises.

147. While he was employed by Sogeti, Martinez performed consulting work for Sogeti's customer, Tri-West, on its premises.

148. After Martinez resigned from employment by Sogeti on April 3, 2008, and became employed by Neudesic, he continued to perform consulting work for Tri-West, on its premises.

149. Patadia worked closely with Martinez at the Tri-West location.

150. Patadia resigned from employment by Sogeti on May 16, 2008, the same resignation date as Collins-AZ, to become employed by Neudesic.

151. Neudesic employed Patadia as a result of its knowledge of the qualifications and capabilities of Patadia acquired from Scariano and Martinez.

152. Neudesic employed Patadia with the assistance and participation of Scariano and Martinez, who acted in concert with Neudesic.

153. Neudesic, Scariano and Martinez used private, confidential and trade secret information of Sogeti in order for Neudesic to employ Patadia.

154. Neudesic employed Patadia with knowledge of and in violation of the restrictive covenants and provisions of the Scariano's agreement with Sogeti and of Martinez' agreement with SARK, which was assigned to Sogeti.

155. Scariano and Martinez violated of the restrictive covenants and provisions of the Scariano's agreement with Sogeti and of Martinez' agreement with SARK, which was assigned to Sogeti, in connection with Neudesic's employment of Patadia.

156. Joseph P. Ladis ("Ladis") was hired by SARK on July 17, 2000 for its Phoenix office.

157. After the acquisition of SARK by Sogeti on March 1, 2007, Ladis became employed by Sogeti in the Phoenix office, where he worked as a Senior Consultant.

158. Ladis was supervised by Scariano during her employment by SARK and supervised by Scariano and Alloway during his employment by Sogeti.

159. Ladis has tendered notice that he will resign from his employment by Sogeti, which resignation will become effective on July 3, 2008.

160. Neudesic employed Ladis as a result of its knowledge of the qualifications and capabilities of Ladis acquired from Scariano or Martinez.

161. Neudesic employed Ladis with the assistance and participation of Scariano and Martinez, who acted in concert with Neudesic.

162. Neudesic, Scariano and Martinez used private, confidential and trade secret information of Sogeti in order for Neudesic to employ Ladis.

163. Neudesic employed Ladis with knowledge of and in violation of the restrictive covenants and provisions of the Scariano's agreement with Sogeti and of Martinez' agreement with SARK, which was assigned to Sogeti.

164. Scariano and Martinez violated of the restrictive covenants and provisions of the Scariano's agreement with Sogeti and of Martinez' agreement with SARK, which was assigned to Sogeti, in connection with Ladis' employment of Patadia.

**Michael A. Holdorf**

165. Michael A. Holdorf ("Holdorf") became employed by SARK on February 12, 1992 for its Dallas, Texas office as a consultant.

166. Holdorf originally reported to Collins-TX during his employment by SARK.

LAW OFFICES
TIMOTHY G. KASPAREK, PLLC
P.O. Box 7437
Goodyear, Arizona 85338
Telephone: 623-242-8945
Facsimile: 866-564-1457

LAW OFFICES
TIMOTHY G. KASPAREK, PLLC
P.O. Box 7437
Goodyear, Arizona 85338
Telephone: 623-242-8945
Facsimile: 866-564-1457

167. Later, after Collins-TX became SARK's Senior Vice President – West, Holdorf was supervised directly by Douglas Jones, who reported to Collins-TX.

168. Even though Holdorf ceased to report directly to Collins-TX, Holdorf continued to communicate with Collins-TX after he became SARK's Senior Vice President – West.

169. Holdorf had a written employment, non-competition and confidentiality agreements with SARK, copies of which are attached to this Complaint collectively as Exhibit D and incorporated fully herein by reference.

170. Neudesic acquired knowledge of the restrictive covenants and provisions of SARK's agreements during or after the recruiting of Collins-TX or Holdorf, if not before.

171. SARK's rights under the agreements with Holdorf were assigned to Sogeti as part of the acquisition of SARK by Sogeti on March 1, 2007.

172. Neudesic knew that SARK'S rights under its agreements were assigned to Sogeti as part of the acquisition of SARK by Sogeti on March 1, 2007.

173. After the acquisition of SARK by Sogeti on March 1, 2007, Holdorf became employed by Sogeti in the Houston, Texas office, where he worked as Director-Microsoft Practice Leader.

174. In the Sogeti organization, Holdorf reported to Collins-TX until the termination of Collins-TX' employment by Sogeti on September 21, 2007.

175. Holdorf resigned his employment by Sogeti on April 18, 2008, to become employed by Neudesic in its Dallas, Texas office.

176. Holdorf resigned his employment by Sogeti on April 18, 2008 to join Neudesic within one week of Scariano's resignation from Sogeti on April 11, 2008 to join Neudesic.

LAW OFFICES
TIMOTHY G. KASPAREK, PLLC
P.O. Box 7437
Goodyear, Arizona 85338
Telephone: 623-242-8945
Facsimile: 866-564-1457

177. Neudesic recruited and employed Holdorf, with the assistance of Collins-TX and with the knowledge of Holdorf's qualifications and capability acquired from Collins-TX.

178. Collins-TX participated in and acted in concert with Neudesic to recruit and hire Holdorf, in violation of the restrictive covenants and provisions of Collins-TX' previous employment agreement with Sogeti.

179. Neudesic and Collins-TX used private, confidential and trade secret information of Sogeti in order for Neudesic to recruit and employ Holdorf.

180. Neudesic and Collins-TX recruited Holdorf with knowledge of and in violation of the restrictive covenants and provisions of Collins-TX agreement with Sogeti.

**Tracy A. Derr**

181. Tracy A. Derr ("Derr") became employed by SARK on December 1, 1998 for its Houston, Texas office as a marketing Account Representative.

182. During his employment by SARK, Derr was supervised directly in Houston by Brett Fischer, who reported to Collins-TX, as SARK's Senior Vice President – West.

183. After Fisher transferred to the Dallas, Texas office of SARK, Derr reported directly to Collins-TX regarding marketing and sales in Houston.

184. After the acquisition of SARK by Sogeti on March 1, 2007, Derr became employed by Sogeti in the Houston, Texas office, where he continued to work as an Account Representative and reported to Mark Rizzo, Geographic Vice President.

185. Derr continued to communicate with Collins-TX on a personal basis after Mark Rizzo became Derr's supervisor in Houston.

186. Neudesic recruited Derr for employment, gaining knowledge of his qualifications and capabilities through information acquired from Collins-TX, Scariano or Holdorf.

- 23 -

187. During late March or early April 2008, Derr communicated with Collins-TX, Scariano and Holdorf about employment by Neudesic.

188. Collins-TX, Scariano and Holdorf encouraged Derr to become employed by Neudesic, in violation of their employment agreements with Sogeti.

189. Collins-TX, Scariano and Holdorf communicated confidential information to Neudesic about Derr, in violation of their employment agreements with Sogeti and SARK, which had been assigned to Sogeti..

190. On or about May 30, 2008, Derr gave notice of his resignation from employment by Sogeti, to become employed by Neudesic.

191. Derr's resignation from Sogeti will become effective June 30, 2008.

192. Neudesic recruited Derr and is hiring him to establish a Houston office for Neudesic, which will compete directly for customers of Sogeti's Houston office.

193. As Sogeti's marketing Account Executive in Houston, Derr possesses private, confidential and trade secret information about Sogeti's Houston area customers, including their identities, contact persons and service needs.

194. Neudesic acted in concert with Collins-TX, Scariano and Holdorf to recruit and employ Derr, with knowledge of the restrictive covenants and provisions of their agreements with Sogeti and SARK, which was assigned to Sogeti.

**Neudesic Solicits Sogeti Customers With Assistance Of Former Sogeti Employees**

**Sundt Construction, Inc.**

195. Sundt Construction, Inc. ("Sundt") has been a customer of Sogeti's Phoenix office within the one year of April 11, 2008.

196. Neudesic has solicited or sold consulting services to Sundt, with the active participation and assistance of Scariano and Martinez, subsequent to their resignations from Sogeti on April 11 and March 14, 2008, respectively.

LAW OFFICES
TIMOTHY G. KASPAREK, PLLC
P.O. Box 7437
Goodyear, Arizona 85338
Telephone: 623-242-8945
Facsimile: 866-564-1457

- 24 -

197. Scariano and Martinez solicited or sold Neudesic's consulting services to Sundt in violation of the restrictive covenants and provisions of their prior employment agreements with Sogeti or SARK, which was assigned to Sogeti.

198. Neudesic, Scariano and Martinez used private, confidential and trade secret information about Sundt, its contact persons, and service needs, acquired through Scariano and Martinez, to solicit or sell Neudesic's consulting services to Sundt.

199. Neudesic knew about the restrictive covenants and provisions of Scariano's and Martinez' prior employment agreements with Sogeti or SARK, which was assigned to Sogeti, when it acted in concert with them to solicit or sell consulting services to Sundt.

## CVS Caremark

200. CVS Caremark ("Caremark") has been a customer of Sogeti's Phoenix office and has been solicited for consulting services by Sogeti within the one year of April 11, 2008.

201. Neudesic has solicited the sale of consulting services to Caremark, with the active participation and assistance of Scariano, subsequent to his resignation from Sogeti on April 11, 2008.

202. Scariano solicited Caremark to sell Neudesic's consulting services to Caremark in violation of the restrictive covenants and provisions of his prior employment agreement with Sogeti.

203. Neudesic and Scariano used private, confidential and trade secret information about Caremark, its contact persons, and service needs, acquired through Scariano, to solicit the sale of Neudesic's consulting services to Caremark.

204. Neudesic knew about the restrictive covenants and provisions of Scariano's prior employment agreement with Sogeti when it acted in concert with him to solicit the sale of consulting services to Caremark.

LAW OFFICES
TIMOTHY G. KASPAREK, PLLC
P.O. Box 7437
Goodyear, Arizona 85338
Telephone: 623-242-8945
Facsimile: 866-564-1457

LAW OFFICES
TIMOTHY G. KASPAREK, PLLC
P.O. Box 7437
Goodyear, Arizona 85338
Telephone: 623-242-8945
Facsimile: 866-564-1457

**Gamestop Corporation**

205. Gamestop Corporation ("Gamestop") has been a customer of Sogeti's Dallas office and has been solicited for consulting services by Sogeti within the one year of April 18, 2008.

206. Neudesic has solicited the sale of consulting services to Gamestop, with the active participation and assistance of Collins-TX and Holdorf, subsequent to their termination or resignation from employment by Sogeti on September 21, 2007 and April 18, 2008, respectively.

207. Collins-TX and Holdorf solicited Gamestop to sell Neudesic's consulting services to Gamestop in violation of the restrictive covenants and provisions of their prior agreements with Sogeti or SARK, which had been assigned to Sogeti.

208. Neudesic, Collins-TX and Holdorf used private, confidential and trade secret information about Gamestop, its contact persons, and service needs, acquired through Collins-TX and Holdorf, to solicit the sale of Neudesic's consulting services to Gamestop.

209. Neudesic knew about the restrictive covenants and provisions of Collins-TX' and Holdorf's prior agreements with Sogeti and SARK, which had been assigned to Sogeti, when it acted in concert with them to solicit the sale of consulting services to Gamestop.

**FIRST CLAIM**

**(Breach Of Restrictive Covenants By Scariano, Martinez and Collins)**

210. Sogeti incorporates fully by reference the allegations set forth in paragraphs 1 through 209 of this Complaint above.

211. Scariano and Collins-TX agreed to restrictive covenants and agreements in their employment agreements with Sogeti

- 26 -

LAW OFFICES
TIMOTHY G. KASPAREK, PLLC
P.O. Box 7437
Goodyear, Arizona 85338
Telephone: 623-242-8945
Facsimile: 866-564-1457

212. The substance of the restrictive covenants and agreements involving Scariano and Collins-TX is set forth in paragraphs 16, 17 and 18 above.

213. Martinez agreed to restrictive covenants and agreements in his Employee Agreement with SARK.

214. The substance of the restrictive covenants and agreements involving Martinez is set forth in paragraph 30 above.

215. Sogeti received assignment of SARK's rights under the Employee Agreement with Martinez as part of the acquisition of SARK by Sogeti on March 1, 2007.

216. The restrictive covenants and provisions of the agreements between Scariano, Martinez and Collins-TX with Sogeti and SARK relating to and prohibiting direct or indirect (a) soliciting, attempting to solicit, or hiring employees of Sogeti within eighteen months of termination of employment, (b) soliciting, selling or performing services that are competitive with Sogeti within one year of termination of employment, or (c) use, distribution or disclosure of private, confidential or trade secret information of Sogeti, survived the termination of employment of Scariano, Martinez and Collins-TX.

217. Scariano breached the restrictive covenants and his agreements with Sogeti by using and disclosing private, confidential and trade secret information of Sogeti and by participating, assisting or acting in concert with Neudesic, directly or indirectly, in the soliciting, attempting to solicit or hiring of Martinez, Sivey, Schroedl, Schmalbach, Nguyen, Collins-AZ, Patadia and Derr.

218. Martinez breached the restrictive covenants and his agreements with SARK, that were assigned to Sogeti, by using and disclosing private, confidential and trade secret information of Sogeti and by participating, assisting or acting in concert with

Neudesic, directly or indirectly, in the soliciting, attempting to solicit or hiring of Schroedl, Nguyen, Collins-AZ, and Patadia.

219. Collins-TX breached the restrictive covenants and his agreements with Sogeti by using and disclosing private, confidential or trade secret information of Sogeti and by participating, assisting or acting in concert with Neudesic, directly or indirectly, in the soliciting, attempting to solicit or hiring of Scariano, Holdorf and Derr.

220. Scariano breached the restrictive covenants and his agreements with Sogeti by using and disclosing private, confidential and trade secret information of Sogeti and by participating, assisting or acting in concert with Neudesic, directly or indirectly, in the soliciting, selling or performing services for Sundt and Caremark that are competitive with Sogeti.

221. Martinez breached the restrictive covenants and his agreements with SARK, that were assigned to Sogeti, by using and disclosing private, confidential and trade secret information of Sogeti and by participating, assisting or acting in concert with Neudesic, directly or indirectly, in the soliciting, selling or performing services for Sundt that are competitive with Sogeti.

222. Collins-TX breached the restrictive covenants and his agreements with Sogeti by using and disclosing private, confidential and trade secret information of Sogeti and by participating, assisting or acting in concert with Neudesic, directly or indirectly, in the soliciting, selling or performing services for Gamestop that are competitive with Sogeti.

223. As a result of such conduct by Scariano, Martinez and Collins-TX, Sogeti has been significantly harmed and damaged, in amounts that will be proven at trial, in addition to which Sogeti is entitled to injunctive relief against them to prevent irreparable harm and damage in the future.

LAW OFFICES
TIMOTHY G. KASPAREK, PLLC
P.O. Box 7437
Goodyear, Arizona 85338
Telephone: 623-242-8945
Facsimile: 866-564-1457

LAW OFFICES
TIMOTHY G. KASPAREK, PLLC
P.O. Box 7437
Goodyear, Arizona 85338
Telephone: 623-242-8945
Facsimile: 866-564-1457

## SECOND CLAIM

### (Interference With Contract or Business Relations)

224. Sogeti incorporates fully by reference the allegations set forth in paragraphs 1 through 223 of this Complaint above.

225. A valid contractual relationship for employment existed between Sogeti and its employees Collins-TX, Scariano, Martinez, Sivey, Schroedl, Schmalbach, Nguyen, Collins-AZ, Patadia, Holdorf and Derr.

226. A valid contractual relationship or business expectancy existed between Sogeti and Sundt, Caremark and Gamestop.

227. Neudesic, Collins-TX, Scariano and Martinez knew of such contractual relationships or business expectancies.

228. Neudesic and Collins-TX intentionally interfered with and induced or caused a breach of the relationships or business expectancies involving Scariano, Holdorf, Derr and Gamestop.

229. Neudesic and Scariano intentionally interfered with and induced or caused a breach of the relationships or business expectancies involving Martinez, Sivey, Schroedl, Schmalbach, Nguyen, Collins-AZ, Patadia, Derr, Sundt and Caremark.

230. Neudesic and Martinez intentionally interfered with and induced or caused a breach of the relationships or business expectancies involving Schroedl, Nguyen, Collins-AZ, Patadia, and Sundt.

231. Neudesic, Collins-TX, Scariano and Martinez acted improperly.

232. Sogeti was damaged significantly, in an amount to be proven at trial, by such interference and breach of such relationships or business expectancies, in addition to which Sogeti is entitled to injunctive relief against defendants to prevent irreparable harm and damage in the future..

LAW OFFICES
TIMOTHY G. KASPAREK, PLLC
P.O. Box 7437
Goodyear, Arizona 85338
Telephone: 623-242-8945
Facsimile: 866-564-1457

# THIRD CLAIM

## (Misappropriation of Trade Secrets)

233. Sogeti incorporates fully by reference the allegations set forth in paragraphs 1 through 232 of this Complaint above.

234. Collins-TX and Scariano agreed in their employment agreements with Sogeti that all private information, both oral and written, of Sogeti and its customers or potential customers, including, but not limited to, the identity of Sogeti's customers or potential customers, the identity of Sogeti's customers' representatives with whom Sogeti has dealt, the identity of all the services being performed for each such customer by Sogeti, the identity of employees or consultants employed by Sogeti in the performance of such services, the price being charged by Sogeti to such customers or potential customers and the needs of such customers or potential customers, are all trade secrets of Sogeti and constitute private information disclosed to Collins-TX and Scariano in connection with their employment.

235. Irrespective of such employment agreements, the private information, both oral and written, of Sogeti and its customers or potential customers, described in paragraph 205 above constitutes trade secret information at law in that it: (a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

236. Neudesic, Collins-TX, Scariano and Martinez used the private and confidential information, both oral and written, of Sogeti and its customers or potential customers to solicit, attempt to solicit, or hire employees of Sogeti, and to solicit, sell or perform services that are competitive with Sogeti.

237. Such use constituted misappropriation of the trade secrets of Sogeti by Neudesic, Collins-TX, Scariano and Martinez.

238. Such use and misappropriation by Neudesic, Collins-TX, Scariano and Martinez was willful and intentional.

239. Such use and misappropriation caused significant damages to Sogeti, in amounts that will be proven at trial, in addition to which Sogeti is entitled to injunctive relief to prevent irreparable harm and damage in the future.

## FOURTH CLAIM

### (Breach of Fiduciary Duty)

240. Sogeti incorporates fully by reference the allegations set forth in paragraphs 1 through 239 of this Complaint above.

241. Scariano agreed in his employment agreement with Sogeti that "Employee agrees that he/she owes a duty of loyalty to Employer." Notwithstanding this express agreement, Scariano owed a duty of loyalty to Sogeti at law during his employment by Sogeti.

242. It was unlawful for Scariano to engage in conduct that was contrary to the best interests of the Sogeti during his employment by Sogeti.

243. Scariano breached his fiduciary duty to Sogeti, when he participated, assisted or acted in concert with Neudesic, directly or indirectly, in the solicitation, attempt to solicit, recruitment or hiring of Martinez, Sivey, Schroedl and Derr by Neudesic prior to Scariano's resignation of his employment by Sogeti on April 11, 2008.

244. As a result of Scariano's breach of his fiduciary duty, Sogeti was damaged substantially, in amount that will be proven at trial.

LAW OFFICES
TIMOTHY G. KASPAREK, PLLC
P.O. Box 7437
Goodyear, Arizona 85338
Telephone: 623-242-8945
Facsimile: 866-564-1457

**FIFTH CLAIM**

**(Aiding and Abetting Breach of Fiduciary Duty)**

245. Sogeti incorporates fully by reference the allegations set forth in paragraphs 1 through 244 of this Complaint above.

246. Scariano agreed in his employment agreement with Sogeti that "Employee agrees that he/she owes a duty of loyalty to Employer." Notwithstanding this express agreement, Scariano owed a duty of loyalty to Sogeti at law during his employment by Sogeti.

247. It was unlawful for Scariano to engage in conduct that was contrary to the best interests of the Sogeti during his employment by Sogeti.

248. Scariano breached his fiduciary duty to Sogeti, when he participated, assisted or acting in concert with Neudesic, directly or indirectly, in the solicitation, attempt to solicit, recruitment or hiring of Martinez, Sivey, Schroedl and Derr by Neudesic prior to Scariano's resignation of his employment by Sogeti on April 11, 2008.

249. Neudesic knowingly participated in or assisted Scariano in the breach of his fiduciary duty to Sogeti.

250. As a result of Scariano's breach of his fiduciary duty, Sogeti was damaged substantially, in amount that will be proven at trial.

**SIXTH CLAIM**

**(Punitive Damages)**

251. Sogeti incorporates fully by reference the allegations set forth in paragraphs 1 through 250 of this Complaint above.

252. The conduct of Scariano, Martinez, Collins-AZ and Neudesic was intentional in that the defendants intended their conduct as alleged herein.

LAW OFFICES
TIMOTHY G. KASPAREK, PLLC
P.O. Box 7437
Goodyear, Arizona 85338
Telephone: 623-242-8945
Facsimile: 866-564-1457

253. Scariano, Martinez, Collins-AZ and Neudesic acted and pursued a course of conduct knowing or having reason to know and consciously disregarding a substantial risk that their conduct might significantly damage Sogeti or injure or harm the rights of Sogeti.

254. Scariano, Martinez, Collins-AZ and Neudesic acted with an evil mind, so as to be liable to Sogeti for punitive damages.

WHEREFORE, Plaintiff Sogeti USA LLC respectfully asks this Court for judgment against Defendants Michael Scariano, Christian Martinez, Michael Collins and Neudesic, LLC jointly and severally as follows:

A.    compensatory damages in an amount to be proven and determined by trial;

B.    punitive damages;

C.    injunctive relief prohibiting defendants from (1) breaching the restrictive covenants of their agreements with Sogeti or SARK, (2) interfering the contractual or business relations of Sogeti, and (3) using or misappropriating the private, confidential or trade secret information of Sogeti;

D.    reasonable attorney's fees as permitted by law;

E.    the costs of this action; and

F.    such other relief as this Court deems appropriate.

**DATED:** June 27, 2008.

**TIMOTHY G. KASPAREK, PLLC**

By___s/Timothy G. Kasparek_____
      Timothy G. Kasparek
      P.O. Box 7437
      Goodyear, Arizona  85338
      Attorney for *Plaintiff, Sogeti USA LLC*

LAW OFFICES
TIMOTHY G. KASPAREK, PLLC
P.O. Box 7437
Goodyear, Arizona  85338
Telephone  623-242-8945
Facsimile:  866-564-1457

## JURY DEMAND

Plaintiff Sogeti USA LLC, through counsel, hereby demands a trial by jury of all issues triable of right by jury.

**TIMOTHY G. KASPAREK, PLLC**

By____s/Timothy G. Kasparek_____
    Timothy G. Kasparek
    P.O. Box 7437
    Goodyear, Arizona 85338
    Attorney for ***Plaintiff, Sogeti USA LLC***

LAW OFFICES
TIMOTHY G. KASPAREK, PLLC
P.O. Box 7437
Goodyear, Arizona 85338
Telephone: 623-242-8945
Facsimile: 866-564-1457