wo

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sogeti USA LLC, ) | No. CV-08-01197-PHX-ROS |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Michael Scariano, et al, ) | |
| Defendants. ) | |

**PROCEDURAL BACKGROUND**

On July 2, 2008 Plaintiff Sogeti USA LLC filed a six-count amended complaint against multiple defendants, including Christian and Teresa Martinez, from whom Plaintiff seeks monetary and injunctive relief. Plaintiff alleges claims for breach of restrictive covenant ("Count One"), interference with contract or business relations ("Count Two") and trade secret misappropriation ("Count Three") against the Martinez Defendants.[1] The claims stem from the departure of several of Plaintiff's employees who began working for Plaintiff's competitor and who allegedly recruited other employees to do the same. Currently before the Court is the Martinez Defendants' ("Defendants") Motion to Dismiss Counts One and Three pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 21). The motion will be denied for the reasons that follow.

---

[1] Plaintiff also alleges breach of fiduciary duty and aiding and abetting breach of fiduciary duty against the remaining Defendants.

**FACTUAL BACKGROUND**

Christian Martinez ("Martinez") was originally employed by Software Architects, Inc. ("SARK") with whom he signed an employment agreement ("Agreement") containing a non-competition provision ("restrictive covenant") (Doc. 22 at ¶¶ 30, 32; Doc. 1 at Ex. C). Plaintiff was not a party to the Agreement and the Agreement is silent as to assignability (Doc. 1 at Ex. C). Martinez became Plaintiff's employee following Plaintiff's acquisition of SARK on March 1, 2007 (Doc. 22 at ¶ 30). Plaintiff alleges SARK's rights in the Agreement were assigned to Plaintiff as part of the acquisition (Doc. 10 at ¶ 34).

Martinez voluntarily terminated employment with Plaintiff on March 14, 2008 and began working for Defendant Neudesic, LLC on March 17, 2008 (Doc. 22 at ¶ 41). Plaintiff alleges Martinez violated the restrictive covenant in the Agreement by working for Neudesic and recruiting Plaintiff's employees to do the same (Doc. 10 at ¶¶ 218, 221, 236-37). Teresa Martinez is Martinez's spouse who is joined as part of the martial community (Doc. 10 at ¶ 260, 263).

**DISCUSSION**

**I. Standard**

Defendants challenge Counts One and Three for "fail[ing] to state a claim upon which relief can be granted."[2] Fed. R. Civ. P. 12(b)(6). The Court's review of the challenge "is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008). Defendants bear the burden of proving Plaintiff failed to state a claim. E.g., Hedges v. U.S., 404 F.3d 744, 750 (3rd Cir. 2005); Bangura v. Hansen, 434 F.3d 487, 498 (6th Cir. 2006).

---

[2]Defendants seek dismissal of Count Three (misappropriation of trade secrets) only to the extent it is based on the Agreement (Doc. 21 at 1).

**II. Applicable Law**

A federal court looks to the substantive law of the forum state when sitting in diversity. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). The parties do not challenge the applicability of Arizona law.

**III. Motion to Dismiss**

Defendants argue Plaintiff does not have standing to enforce the restrictive covenant because (1) Plaintiff was not a party to the Agreement and (2) the restrictive covenant was not validly assigned to Plaintiff. The parties stipulate Plaintiff was not a party to the Agreement. However, the question of assignment is disputed. Defendants argue the question of assignment is beyond factual dispute because, absent Martinez's express consent, no valid assignment occurred and Plaintiff, a non-party to the Agreement, is precluded from enforcing the restrictive covenant. The Court disagrees and finds Martinez's express consent is not required for a valid assignment.

**A. Assignability of Restrictive Covenants Absent Employee's Express Consent**

Whether an employee's express consent is required before an employment contract containing a restrictive covenant can be assigned to a successor company employer is a question of first impression in Arizona.

**1. Arizona Law**

**a. Assignability and Enforcement of Contractual Rights – General Considerations**

Under Arizona law, contractual rights are generally assignable unless the assignment is precluded by the contract, is forbidden by public policy or materially alters the duties of the obligor. Highland Vill. Partners, LLC, v. Bradbury & Stamm Constr. Co., 195 P.3d 184, 187 (Ariz. Ct. App. 2008) (quoting Restatement 2d Contracts § 317(2) (1981)). Moreover, an obligor's assent is "not necessary to make an assignment effective."

Restatement 2d Contracts § 323 cmt. a.[3] Reasonable restrictive covenants in employment contracts are not excepted from this rule and are generally enforceable and assignable. Fearnow v. Ridenour, Swenson, Cleer & Evans, P.C., 138 P.3d 723, 725 (Ariz. 2006) (unless restrictive covenants are "unreasonable in [their] limitations, demonstrate bad faith, or contravene public policy" they are upheld); Supplies for Indus. v. Christensen, 659 P.2d 660, 662 (Ariz. Ct. App. 1983) (an employment contract containing language consenting to assignability allows a successor company to enforce a restrictive covenant contained therein).

### b. Applicability of Christensen

Defendants argue this question is settled by Christensen, which, according to Defendants, requires employee consent before a valid assignment of a restrictive covenant in an employment contract can be made to a successor company employer (Doc. 21 at ¶ 11). However, Christensen stands for a narrower proposition, recognizing a successor company's right to enforce a validly assigned restrictive covenant, and is silent on the question of whether the employee's consent is required for a valid assignment. 659 P.2d at 662-63.

In Christensen, the court had to determine whether an equitable assignment between the employer and a third party beneficiary occurred. Id. at 662. Language in the defendant's employment contract consenting to the assignment helped show that between the employer and the third party beneficiary, there was "an intention on the one side to assign and an intention on the other to receive [consideration]." Id. The court considered the employment contract, including the restrictive covenant, an assignable asset transferrable to a successor. Id. at 661. While the employee in Christensen had consented to the assignment, the court of appeals did not address whether consent was *required* to validate the assignment. Consent was merely a fact helpful to the court's analysis, not a part of the announced rule of law.

---

[3]Arizona will usually apply the law of the Restatement absent contrary precedent. See Ft. Lowell-NSS Ltd. v. Kelly, 800 P.2d 962, 968 (Ariz. 1990).

- 4 -

Because neither Christiansen nor other Arizona cases settle this question, the Court looks to other jurisdictions to help resolve the issue.[4]

### 2. Other Jurisdictions Are Split

Jurisdictions outside Arizona disagree on whether an employee must consent to the assignment of a restrictive covenant prior to enforcement by a successor company. See, generally, Annotation, *Enforceability, by Purchaser or Successor of Business, of Covenant Not to Compete Entered Into by Predecessor and its Employees*, 12 A.L.R. 5th 847 (1993).

### a. Jurisdictions Requiring Express Consent

Some jurisdictions require express consent because a restrictive covenant contained in an employment agreement is "personal" to the employee. The jurisdictions do not explicitly define "personal" as used in this context. However, the term appears to refer to a contract in which the promissor (employee) agrees to limit a right so fundamental to his liberty that the law presumes the promissor only agreed to bind himself in that way because the promissor knows and trusts the identity of the promisee (employer). E.g., Hess v. Gebhard & Co., Inc., 808 A.2d 912, 922 (Pa. 2002) (describing employee restrictive covenants as "personal" because they are based on the "trust that [employer or employee] has in the other . . [t]he fact that an individual may have confidence in the character and personality of one employer does not mean that the employee would be willing to suffer a restraint on his employment for the benefit of a stranger to the original undertaking.").

Addressing the issue as a matter of first impression, the Supreme Court of Nevada held a restrictive covenant is "unassignable absent an express clause permitting assignment." Traffic Control Serv.'s, Inc. v. United Rentals Nw., Inc., 87 P.3d 1054, 1059 (Nev. 2004). The employment contract contained a restrictive covenant but was silent as to assignability. Id. at 1056. The court refused to treat the restrictive covenant as merely another assignable

---

[4]See, e.g.,Tritschler v. Allstate Ins. Co., 144 P.3d 519, 527 (Ariz. Ct. App. 2006) (in a case of first impression, Arizona courts "look for guidance [from] other jurisdictions that have addressed [the] issue").

asset of the company, because "[w]hen an employee enters into a [restrictive covenant] with his employer, he may consider the character and personality of his employer to determine whether he is willing to [agree to be restrained] from future competition with his employer, even after termination of employment." Id. at 1058.

A similar conclusion was reached in Pennsylvania, where the court held that, because restrictive covenants are "personal" to the employee, they are not assignable absent employee consent. Hess, 808 A.2d at 924. The court evaluated whether to allow a successor company to enforce the restrictive covenant when the employment contract was silent as to its assignability. Relying on state policy which disfavors restrictive covenants and in which "personal characteristics of the employment contract permeate the entire transaction," Id. at 922, the court held:

> absent an explicit assignability provision, the courts should be hesitant to read one into the contract. Moreover, the employer, as drafter of the employment contract, is already in the best position to include an assignment clause with the terms of the employment contract.
> Id. at 921.

Defendants rely on several other cases where, following a merger or acquisition, a successor company could not enforce restrictive covenants contained in personal services contracts unless the employee expressly consented to the assignment. E.g., Reynolds and Reynolds Co. v. Hardee, 932 F. Supp 149, 153-54 (E.D. Va. 1996) (restrictive covenant not assignable because employee may not want to "suffer the restraint for the benefit of a stranger"); Sisco v. Empiregas, Inc. of Belle Mina, 237 So.2d 463, 466-67 (Ala. 1970) (a personal services contract is personal to an employee and only by "knowing the character and personality of his master" might an employee agree to be restrained).[5]

---

[5]Neither court defines a "personal service contract," but in both cases the court focused on the relationship of "trust and confidence" between employer and employee and the employee's maintenance of direct relationships with clients. Reynolds, 932 F. Supp. at 153; see also Sisco, 237 So.2d at 465-67.

**b. Jurisdictions Not Requiring Express Consent**

Other jurisdictions support the enforcement of restrictive covenants in employment contracts by successor companies even when the contract is silent as to assignability. In these jurisdictions, contractual rights are generally assignable, the "personal" nature of an employment contract ends following termination, and restrictive covenants are scrutinized to ensure reasonableness in scope or duration.[6]

In an Illinois case, for example, a successor company could enforce restrictive covenants against several employees who left to work for a competitor even though the employment contracts were silent on assignability. AutoMed Technologies, Inc. v. Eller, 160 F. Supp.2d 915, 924 (N.D. Ill. 2001). Noting contractual rights are generally assignable and the "personal" nature of an employment contract ends following termination, the court held restrictive covenants to be enforceable by the successor against the employees. Id. at 923-24; supra Note 6. The court further held "any vestiges of personality are further mitigated when the business is acquired in its entirety . . . [f]or all practical purposes the employees still work for the same business and their duties vary little, if at all, following the assignment." Id. at 924. Recognizing restrictive covenants are already scrutinized for reasonableness, the court held "[w]ithout any Illinois precedent holding that restrictive covenants may never be assigned without consent, we are unwilling to anticipate new public policy restrictions on contract rights." Id.

The same reasoning was applied in a case involving stylists at a hair salon who challenged the ability of a successor company to enforce restrictive covenants. J.H. Renarde,

---

[6] The jurisdictions do not expressly define "personal" as used in this context, but, like the opposing jurisdictions, determine the personal nature of a contract by analyzing the type of liberty the promissor (employee) is contracting away and deciding if this liberty is sufficiently fundamental to establish the promissor's corresponding right to fix the identity of the promissee (employer) and preclude assignment. See, e.g., AutoMed Technologies, Inc. v. Eller, 160 F. Supp.2d 915, 924 (N.D. Ill. 2001) ("[F]or this very same reason, the contract loses its element of personality. An employee has a clear interest in controlling for whom he works. But the identity of the party enforcing a restrictive covenant should make little difference to a former employee.")

Inc. v. Sims, 711 A.2d 410, 412-14 (N.J. Super. Ct. Ch. Div. 1998). Analyzing the dispute in a context supportive of the general assignability of contractual rights, the court rejected authority requiring express consent, stating such a position is based on "certain quaint notions of employment contracts" requiring the employee to know "the character and personality of his master" before agreeing to a restrictive covenant. Id. at 414. Despite the absence of any language addressing assignability, the court held:

> it is preferable to assume that when a business is sold, the purchaser and the employee expect, without new negotiations between them, that the purchaser will honor the employment contract and that the employees, who choose to remain, will honor the promises made to the former employer.
>
> Id.

Additional jurisdictions allow a successor company to enforce a restrictive covenant in personal services contracts following a merger or acquisition, because a mere change in the nature of the business is not enough to prevent enforcement of a restrictive covenant by a successor company even when the contract is silent on assignability. E.g., Alexander & Alexander, Inc. v. Koelz, 722 S.W.2d 311, 312-13 (Mo. Ct. App. 1986) (despite policy against assigning personal services contracts, such contracts are assignable absent consent when "there is no material change in the contract obligations and duties of the employee"); Artromick Int'l, Inc., v. Koch, 759 N.E.2d 385, 387-88 (Ohio Ct. App. 2001) (adopting a less restrictive approach toward assignments of restrictive covenants, the court held a successor company could enforce a restrictive covenant in part because the employee inherited no additional obligations following the acquisition).

**3. Arizona Rule**

Arizona law is most consistent with the jurisdictions that allow successor companies to enforce restrictive covenants, even when the contract is silent regarding assignability and the employee has not consented. Like those jurisdictions, Arizona law favors the enforcement and assignment of contractual rights, Highland, 195 P.3d at 187, does not disfavor restrictive covenants in employment agreements, Fearnow, 138 P.3d at 725, and allows such restrictive

- 8 -

1   covenants to be assigned, Christensen, 659 P.2d at 661. Arizona courts treat restrictive
2   covenants in employment agreements as assignable assets enforceable by successor
3   companies, not as highly personalized arrangements between employee and employer. Id.
4   at 661.

5       This approach to restrictive covenants differs considerably from those jurisdictions
6   requiring express employee consent. Under Arizona law, any "personal" element of an
7   employment contract ends once employment terminates. Titus v. Super. Ct. Maricopa
8   County, 368 P.2d 874, 876 (Ariz. 1962) (restrictive covenant for personal services contract
9   enforceable only after the termination of employment because personal nature of the
10  obligation has ended). In contrast, the jurisdictions requiring consent assume the "character
11  and personality of [the] employer" are critical elements of the contract, "even after
12  termination of employment." Traffic Control, 87 P.3d at 1059. Those jurisdictions are also
13  concerned an employee will unwillingly "suffer the restraint for the benefit of a stranger."
14  Reynolds, 932 F. Supp at 153-54. Arizona law, however, has a distinct focus, less concerned
15  with the personal relationship between employer and employee and more concerned with
16  protecting employees from overreaching or other unconscionable arrangements, scrutinizing
17  restrictive covenants for whether they are  "unreasonable . . . demonstrate bad faith, or
18  contravene public policy." Fearnow, 138 P.3d at 725.

19      The Court agrees with the holding of the Northern District of Illinois which found, in
20  the absence of "precedent holding that restrictive covenants may never be assigned without
21  consent . . . new public policy restrictions on contractual rights" should not be created.
22  AutoMed, 160 F. Supp at 924.  As such, absent a contrary ruling by an Arizona court,
23  express consent of an employee is not required before an employer's contractual rights can
24  be assigned to, and enforced by, a successor company.

25
26
27
28  **B. Assignability of Martinez's Agreement**

> Under Arizona law, a contract is presumed assignable unless:
>
> (a) the substitution of a right of the assignee for the right of the assignor would materially change the duty of the obligor, or materially increase the burden or risk imposed on him by his contract, or materially impair his chance of obtaining return performance, or materially reduce its value to him, or
>
> (b) the assignment is forbidden by statute or is otherwise inoperative on grounds of public policy, or
>
> (c) assignment is validly precluded by contract.
>
> Highland, 195 P.3d at 187 (quoting Restatement 2d Contracts § 317(2))

As discussed above, the Agreement is silent on the question of assignability and thus assignment is not "validly precluded." Restatement 2d Contracts § 317 cmt. f (defining valid preclusion as a "contractual prohibition"). Nor is the assignment "inoperative on grounds of public policy," as the Court has rejected Defendants' proposed rule of public policy. Defendants argue, in the reply, the assignment of the Agreement from SARK to Plaintiff materially altered Martinez's duty, rendering the assignment void (Doc. 31 at 4-5). As Defendants improperly raise this issue for the first time in the reply, Plaintiff has no opportunity to respond and the Court has not received the benefit of full briefing. The Court will not grant a motion to dismiss on the basis of argument first raised in a reply. See U.S. ex. rel. Giles v. Sardie, 191 F. Supp. 2d 1121, 1127 (C.D. Cal. 2000) ("It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers.") (citing Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 894-95 (1990)). Thus, the Court will express no opinion on this issue. Regardless, even if Defendants' last argument were legitimate, the Court must resolve all factual inferences in Plaintiff's favor and assume a valid assignment occurred. Lazy Y. Ranch Ltd., 546 F.3d at 588

**C. Plaintiff's Standing**

Generally, "only the parties . . . to a contract may enforce it." <u>Lofts at Fillmore Condo. Assoc. v. Reliance Commercial Constr.</u>, 190 P.3d 733, 734 (Ariz. 2008) (quoting <u>Treadway v. W. Cotton Oil & Ginning Co.</u>, 10 P.2d 371, 375 (Ariz. 1932)). However, assignees have standing to enforce contractual rights assigned to them. <u>Highland</u>, 195 P.3d at 187. Because the Court must assume the Agreement was assigned to Plaintiff, it must also assume Plaintiff has standing to enforce the Agreement. <u>Lazy Y. Ranch Ltd.</u>, 546 F.3d at 588.

Accordingly,

**IT IS ORDERED** Defendants' Motion to Dismiss Counts One and Three of Plaintiff's Complaint (Doc. 21) **IS DENIED**.

DATED this 27th day of March, 2009.

_____
Roslyn O. Silver
United States District Judge